IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED CENTRAL BANK, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | No. 10 C 3176 |
| v. | ) | |
| | ) | Judge John A. Nordberg |
| DANY INVESTMENT, LLC *et al.* | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This is a mortgage foreclosure case brought by plaintiff United Central Bank ("UCB"), successor to Mutual Bank. In May 2008, Mutual Bank made three loans totaling approximately $6 million to defendants (Umar F. Paracha and companies he owns). The loan proceeds were used to buy investment properties – a hotel in the Wisconsin Dells, a hotel in Davenport, Iowa, and a truck stop gas station in Hampshire, Illinois. The FDIC took over Mutual Bank and, in July 2009, sold the assets (including these three loans) to UCB who then filed this action to foreclose on these properties and to enforce promissory notes and related guaranties.

The Paracha defendants answered and also filed a counterclaim alleging that they entered into the loan agreements based on false promises about the income, value, and other attributes of the properties. Before discovery was taken, UCB filed three case-dispositive motions. First, it moved for summary judgment on most of the counts in the complaint. The motion was based in part on the fact that the Paracha defendants admitted in their answers that they signed the loan documents and had not made any loan payments. Second, UCB moved to dismiss the counterclaims because they were barred by (among other things) the Illinois Credit Agreements Act. Third, UCB moved to dismiss the affirmative defenses on the same basic grounds as the first two motions. UCB portrayed this case as a straightforward mortgage foreclosure case, albeit one brought by a successor bank.

In response, the Paracha defendants raised several arguments. They noted generally that Mutual Bank had been taken over by the FDIC which had accused

Mutual Bank and those working for it of making high-risk loans to a small group of high-volume borrowers based on inflated appraisals and other false promises and without giving attention to whether the borrowers could repay the loans. Aside from this general point, they raised only two specific arguments. First, for one of the loans, they asserted that a title closing sheet referred to a $700,000 construction escrow, and they claimed they never received this money. Second, for one of the three loans, they asserted that they made monthly payments of $28,000 for the first year, which was not accounted for in the tally submitted by UCB.

On March 9, 2012, this Court denied all three motions. *See* Dkt. # 71.[1] The primary reason for the ruling was that the Paracha defendants had not yet had the opportunity to take any discovery. However, we told them that we were giving them the benefit of the doubt because their briefs had been vague, lacking in authority, and even contradictory in places. (*Id.* at 3.) We further advised them that going forward they would eventually have to provide specific evidence and better arguments to avoid summary judgment. (*Id.*)

The Paracha defendants then filed an amended counterclaim in which they re-asserted the same fraud-based claims against UCB but also added as cross-defendants several individuals and a law firm working for Mutual Bank in May 2008 when these loans were made – specifically, Amrish Mahajan, John Benik, Pethinaidu Veluchamy, James A. Regas, and Regas, Frezados & Dallas ("FRD"). (Dkt. # 106.)

Meanwhile, UCB and the Paracha defendants proceeded with discovery under the supervision of the Magistrate Judge.

Now before the court are seven motions  UCB has filed essentially the same three motions we denied – namely, a second motion for summary judgment seeking judgment on the loans and guaranties (Dkt. # 131); a motion to dismiss the amended counterclaims (Dkt. # 134), and a second motion to strike the affirmative defenses (Dkt. # 129).[2]  In short, after giving defendants the benefit of discovery,

---

[1] In this ruling, we set forth the facts in greater detail, which we will not repeat here as they are basically unchanged.

[2] UCB also filed a motion for ruling on its earlier motion for summary judgment against defendant Iqrar Bokhari on Counts I and II (Dkt. #130).  Bokhari has been represented by separate counsel from the other defendants and never responded to the first, nor this second, summary judgment motion despite being given ample time to do so. For this reason, and for the reasons further discussed herein regarding the summary judgment motion against the other defendants, this

-2-

UCB is re-asserting its same arguments. Cross-claimants have filed two similar motions to dismiss the amended cross-claims (Dkt. # 127 and # 129).

## Analysis

We begin with the motions to dismiss the Paracha defendants' counter and cross-claims, which allege that Mutual Bank and those working for it (a law firm and others) made false promises about these loans in May 2008 in order to induce the Paracha defendants to enter into the transactions. UCB and cross-claimants (who we'll refer to jointly for convenience as UCB) argue that these claims must be dismissed for lack of jurisdiction because the Paracha defendants failed to exhaust their administrative remedies by presenting these claims to the FDIC, as required by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. 101-73, 103 Stat. 183 (1989). We agree.

Under FIRREA, the FDIC is authorized to administer claims against a bank for which the FDIC acts as receiver. *Farnik v. FDIC*, 707 F.3d 717, 721 (7th Cir. 2013). In *Farnik*, the Seventh Circuit confirmed that FIRREA requires dismissal for lack of jurisdiction of any claims that relate to the alleged bad acts of the bank in FDIC receivership if those claims have not been previously submitted to FIRREA's administrative claims process. *Id.* at 723 (claims alleging that bank unilaterally prepared loan documents concealing the true nature of interest rates were barred for failure exhaust as required by FIRREA).

Here, there is no dispute that the Paracha defendants failed to present these claims to the FDIC. It is also clear that the counterclaims and cross-claims all relate to the making of the three loans by Mutual Bank in 2008. Therefore, these claims are "claims 'relating to any act or omission' of a failed bank" and therefore cannot be considered here unless first presented to the administrative claims procedure. *Id.* at 722. UCB relies heavily on *Farnik*. However, in a supplemental brief, it has cited to additional recent cases bolstering its argument. *See* Dkt. # 160 (*citing Dane v. IndyMac Mortgage Servs.*, 2013 WL 5595406 (D. Or. Oct. 11, 2013); *Demolo v. U.S. Bank Nat'l Assoc.*, 727 F.3d 117 (1st Cir. 2013); *Tavake v. JPMorgan Chase Bank*, 2013 WL 3332148 (E.D. Cal. July 1, 2013)).

Faced with this authority, the Paracha defendants have not even attempted to make a credible argument that their claims as currently plead are not barred.[3]

---

motion will be granted.

[3]Even if the Paracha defendants could avoid the FIRREA exhaustion obstacle, their claims would still be barred by the Illinois Credit Agreements Act,

Instead, they have filed a motion for leave to amend their counterclaims and cross-claims in which they propose to change their theory of the case. *See* Dkt. # 172; *see also* #171 and #180. Specifically, they state that their counterclaims (more precisely, it would have to be the counterclaims they *hope* to file) are now "not based on any action taken by the failed Mutual Bank." (#180 at 3.) They assert that the $700,000 construction escrow was transferred to UCB when it took over Mutual Bank in July 2009. (*Id.*) In other words, they now take the position that Mutual Bank never took or distributed the construction escrow but held it and passed it along to UCB who now supposedly still has it and refuses to distribute it. (*Id.*) Thus, the proposed new counterclaims would be asserted only against UCB and would all be based on alleged acts taken after July 2009. (Dkt. #172.)

This is a significant and belated change in their theory of the case. UCB complains that it is too late to switch theories and also points out that the Paracha defendants have not even attached a proposed second amended counterclaim to their motion. While these are valid objections, we will again give the Paracha defendants the benefit of the doubt and will allow them one last chance to make an argument regarding the $700,000 escrow funds. However, we note that the Paracha defendants must come forward with more specific allegations (which they have promised to do) if they hope to survive a motion to dismiss. They have had the benefit of some discovery. They presumably have some documents in their own possession. They suggest that there is an escrow agreement, but have not supplied a document nor even attempted to describe what its terms are, such as when or how these funds could be released. In fact, it is not even clear that Mutual Bank, as opposed to a third party, held the escrow funds. The burden will be on the Paracha defendants to come forward with plausible allegations to justify going forward with this claim. We agree with UCB's assertion that if the Paracha defendants seek to assert a claim against UCB for the escrow, they have the burden of providing a theory of contract, tort, or equity that would impose a duty on UCB. (Dkt. # 178 at 6.)

We turn finally to UCB's motion for summary judgment on the loans and guaranties totaling approximately $ 6 million. UCB presents the same evidence submitted with its first motion, which includes a number of documents such as the promissory notes, guaranties and other loan documents. UCB's motion is based firstly on the fact that the Paracha defendants admitted in their answers that they

---

815 ILCS 160/1, which provides that a party may not amend a credit agreement unless such amendment is in writing and signed by the debtor and creditor. *See* Dkt. # 154 at 6, *citing Whirlpool Fin'l Corp. v. Sevaux*, 96 F.3d 216 (7th Cir. 1996) (claims based on oral promises to extinguish note obligations are barred by the Illinois Credit Agreements Act).

executed all the loan documents, that the loans are in default, that UCB is the holder of the indebtedness, and that the amounts outstanding are correct. *See* Defs. Answer at ¶¶ 18, 30.[4] As UCB correctly points out, the Paracha defendants may not later contradict these answers because they are "judicial admissions" that "are binding" and may not be later controverted. *Keller v. U.S.A.*, 58 F.3d 1194, 199 n.8 (7th Cir. 1995). Secondly, UCB relies on an affidavit (Dkt. # 133-4) from Asif Mujtaba who is the vice president of special assets of UCB. He states that he reviewed all the records relating to these loans, which were maintained on a computer system and tracked through a Fidelity software program that recorded payments, disbursements, interest, charges, and loan history and balances. Attached to his affidavit are Loan Payoff Statements reflecting the amounts still outstanding. We need not summarize all the details and numbers herein, as they are set forth in these exhibits as well as the parties' briefs.

In response, the Paracha defendants again make vague and contradictory assertions, as they did in response to the original motions, and offer as evidence only a single, short, and vague affidavit from Umar Paracha. In a few places, they make a general assertion to the effect that they did not get any of the loan amounts. However, these assertions cannot be credited because, as noted above, they contradict their answers to the complaint. Moreover, the Paracha defendants have simply not offered any evidence nor explanation to support this allegation. For example, if they did not receive the loan amounts, how did they acquire these three properties? Why did they make the $28,000 loan payment? Why did they (allegedly) enter into a written agreement extending the grace period of two of these loans if they were defrauded from the outset and never received this money? Why did they continue to put their own money into fixing up the properties? Why did they never complain to anyone that they did not get the money in May 2008? They offer no answer for these obvious questions. In addition, their main theory of recovery has been that they in fact did receive these loans, but only did so based on false promises. *See, e.g.*, Dkt. # 148 at 6-7 (stating that "Paracha relied on this false statement *and took the loans*") (emphasis added); Dkt. # 148-1 at ¶ 11 (stating that false statements were made "so that [Paracha] would *accept* the loans") (emphasis added).

Aside from these generalized and contradictory arguments, the Paracha defendants only make two specific arguments that could potentially defeat summary judgment. First, they assert that for the Hampshire loan, they in fact made a $28,000 monthly payment during the first year. Unlike the above

---

[4]The Paracha defendants also admitted to many of these same facts in their response to UCB's statement of material facts. *See* UCB SOF ¶¶ 8-12, 18, 29, 31-36, 42, 53, 55-56, 58-60, 66, 76.

arguments, this one is at least relatively specific, even though the Paracha defendants surprisingly still fail to come forward with a single document to substantiate the allegation, relying only on Paracha's affidavit asserting that he did pay this amount.[5] This lack of evidence, however, is not an issue because, as UCB points out in its response brief, the Loan Payoff Statement gives the Paracha defendants credit for having made these $28,000 monthly payments. *See* Dkt. # 154 at 8; Mujtaba Aff. at ¶¶ 3, 5; Ex. 3 to UCB SOF. Thus, the judgment being sought by UCB does *not* include these amounts. This argument therefore cannot preclude summary judgment.

Second, the Paracha defendants assert that for two of the three loans, the ten-day grace period in May 2009 was extended by some indeterminate amount of time in a written agreement entered into on some unknown date. This argument fails because the Paracha defendants have provided no evidence whatsoever to suggest there was such an agreement. All they have offered is a one-sentence assertion in Paracha's affidavit that "for the other two properties, the grace period was extended in writing." (Dkt. # 148-1 at ¶ 7.) But they have not attached an agreement. Nor have they offered *any* contextual details. Not even a rough ballpark estimate as to when this agreement was entered into, no explanation for why the bank agreed to extend the date, no identification of who at the bank negotiated the agreement, no summary of what the terms were (*e.g.* how long was the maturity date extended?). The bare conclusory assertion – without a single piece of confirmatory evidence and without any explanation beyond a single sentence – is not enough for a reasonable factfinder to conclude that there was a written agreement modifying a loan. There is simply no credible evidence to suggest such a written agreement was entered into. Despite given the chance to conduct discovery, the Paracha defendants have submitted no evidence to support this allegation.

For the above reasons, with the exception of the portion of the claim relating to the $700,000 escrow, we grant UCB's motion for summary judgment on Counts I, II, III, IV, V, and VIII. UCB has requested that we enter a final judgment on these claims under Rule 54(b) to allow it to foreclose on these properties. UCB states that judgment on these claims would not be affected by whether or not the Paracha defendants could recover on their potential claim for the $700,000 in escrow and

---

[5]It is indeed surprising that the Paracha defendants and their counsel cannot provide some documentary evidence to support this basic point that they made monthly payments of $28,000. Surely, they would have a cancelled check or other bank record reflecting that they paid out over $300,000 in rent in one year. Presumably these payments would be also reflected in corporate financial documents or tax records. These are not documents being held by Mutual Bank or some other party potentially adverse to them.

UCB offers to reduce the amount of its lien by $700,000 plus interest until this Court subsequently resolves this issue.  We decline this request, finding that it would be more efficient for the parties to expeditiously conclude this litigation of this one remaining claim and then enter a single final judgment with the precise final amounts.

      In conclusion, the only outstanding issue to be resolved in this case is the potential counterclaim by the Paracha defendants against only UCB relating only to the $700,000 loan escrow. We therefore grant in part defendants' motion (Dkt. # 172) for leave to file a second amended counterclaim. The Paracha defendants are given three weeks to file their second amended counterclaims.  With the exception for the potential $700,000 escrow claim, we grant UCB's second motion for summary judgment (Dkt. #131), its second motion to strike affirmative defenses (Dkt. # 129), its motion to dismiss the first amended counterclaims (Dkt. # 134), and its renewed motion for summary judgment against Iqrar Bokhari (Dkt. #130).  We also grant James Regas' and FRD's motions to dismiss the cross-claims (Dkt. # 127 and # 129).  Once the $700,000 escrow issue is resolved, then the parties can submit a proposed final judgment order.

**ENTER:**

_____
**JOHN A. NORDBERG**
**Senior United States District Court Judge**

**DATED:** April 1, 2014