## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| UNITED CENTRAL BANK, a Texas banking corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 10-cv-03176 ) ) Judge Andrea R. Wood |
| DANY INVESTMENT, LLC, *et al.*, | ) ) |
| Defendant. | ) ) ) |
| DANY INVESTMENT, LLC; an Illinois limited liability company; HAMPSHIRE PLAZA LLC, an Illinois limited liability company; USA GASTECH, INC., an Illinois corporation; PAKUS MANAGEMENT, LLC, an Illinois limited liability company; DAVENPORT ESTATE, LLC, an Iowa limited liability company; UMAR F. PARACHA, an individual and resident of the State of Illinois, | ) ) ) ) ) ) ) ) ) ) ) |
| Counter-Plaintiffs, v. | ) ) ) |
| UNITED CENTRAL ABNK, a Texas banking corporation, | ) ) ) |
| Counter-Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Counter-Plaintiffs Dany Investment, LLC, Hampshire Plaza, LLC, Dells Estate LLC, USA Gastech, Inc., Pakus Management, LLC, Davenport Estate, LLC, and Umar F. Paracha have filed a counterclaim against Counter-Defendant United Central Bank ("UCB") for breach of contract based on an alleged failure to disburse money held in escrow by UCB. (Dkt. No. 183.)

UCB, in turn, has filed a motion to dismiss the counterclaim. (Dkt. No. 190.) For the reasons stated below, the Court grants UCB's motion to dismiss with prejudice.

## BACKGROUND

UCB originally brought this suit to foreclose on three properties and to enforce related promissory notes and guaranties. Counter-Plaintiffs filed a counterclaim, and UCB filed motions to dismiss and for summary judgment. In April 2014, with the exception of the portion of the counterclaim relating to a $700,000 escrow, the Court granted UCB's motion for summary judgment, motion to dismiss counterclaims, and motion to strike affirmative defenses. (Dkt. No. 182.) This left Counter-Plaintiffs' counterclaim relating to the $700,000 escrow as the only outstanding issue to be resolved in this case. (*Id.*) Counter-Plaintiffs were granted leave to file a second amended complaint relating to the escrow issue. (*Id.*) Following that order, Counter-Plaintiffs submitted their second amended counterclaim for breach of contract, alleging that UCB failed to perform its contractual obligation as the successor to Mutual Bank to disburse $700,000 being held in escrow. (Dkt. No. 183.)

According to the allegations in the counterclaim, around May 2008, Mutual Bank made loans to Paracha, who is the managing member and owner of the corporate Counter-Plaintiffs, to purchase three properties. (Sec. Am. Countercl. ¶¶ 16-19, Dkt. No. 183.) Counter-Plaintiffs allege that as part of the transaction, the parties agreed that $700,000 would be placed in an escrow account for repairs on the third of the properties. (*Id.* ¶¶ 18-19.) According to Counter-Plaintiffs, "[t]here was no written agreement for this entire transaction, other than the Notes, Mortgage, and closing documents for each property." (*Id.* ¶ 18.) Counter-Plaintiffs further state that "the only written reference to the escrow money was placed on the closing documents[.]" (*Id.*) Counter-Plaintiffs allege that once they had exhausted much of their resources on repairs,

they called John Benik to demand the $700,000 being held in escrow for repairs. (*Id.* ¶ 20.) However, Counter-Plaintiffs allege they never received this money from Mutual Bank. (*Id.* ¶ 19.)

In July 2009, the Federal Deposit Insurance Corporation ("FDIC") shut down Mutual Bank. (*Id.* ¶ 14.) UCB acquired Mutual Bank's loans and other assets pursuant to a Purchase and Assumption Agreement with the FDIC, acting as a receiver for Mutual Bank and pursuant to its authority under the Federal Deposit Insurance Act. (*Id.* ¶ 3.) Following this acquisition by UCB, Paracha made repeated written demands to UCB to release the escrow money for repairs pursuant to the loan agreement and closing documents that UCB became responsible for as the successor to Mutual Bank. (*Id.* ¶¶ 24-25.) Counter-Plaintiffs contend that UCB's refusal to release the $700,000 held in escrow, despite written and oral demands, constitutes a breach of contract by UCB, and that Counter-Plaintiffs were injured by not receiving that money. (*Id.* ¶¶ 26-27.)

## DISCUSSION

### I. Standing Issues

In its motion to dismiss, UCB argues that since the only issue remaining in the counterclaim relates to an escrow arising out of a loan to purchase a "truck-stop-gas station" in Hampshire, Illinois ("Loan 3"), only Loan 3 borrowers, and none of the other Counter-Plaintiffs, have standing to bring this counterclaim. (Mem. in Supp. of Mot. to Dismiss at 5, Dkt. No. 192; Mem. in Opp. to Mot. to Dismiss, ¶ 8, Dkt. No. 197.) Indeed, in opposition to the motion to dismiss the counterclaim, Counter-Plaintiffs acknowledge that Loan 3 was made to Counter-Plaintiff Davenport Estates, LLC ("Davenport"). (Mem. in Opp. to Mot. to Dismiss ¶¶ 8-10, Dkt. No. 197.) Further, Counter-Plaintiffs assert that Davenport was injured by not receiving the escrowed money. (*Id*. at ¶ 10.) Counter-Plaintiffs do not argue that any other of them have

3

standing to bring this claim. Accordingly, the Court finds that only Davenport has standing to pursue the counterclaim and dismisses the counterclaims brought by the other Counter-Plaintiffs.

**II.     Failure to State a Claim**

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The basic pleading requirement is set forth in Federal Rule of Civil Procedure 8(a)(2), under which a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating the sufficiency of the complaint, this Court must "view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

**A.     Financial Institutions Reform, Recovery, and Enforcement Act**

Under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), agreements that tend to diminish or defeat the interest of the FDIC in any asset acquired by it as a receiver must "be written, be executed contemporaneously with the acquisition of the asset . . . be approved by the bank's board of directors or its loan committee, be noted in the bank's minutes, and, continuously from the time of execution, be an official record of the bank," in order to be effective against the FDIC. 12 U.S.C. § 1823(e); *Fed. Deposit Ins. Corp. v. O'Neil*, 809 F.2d 350, 353 (7th Cir. 1987). Furthermore, any agreement that does not meet these requirements, "shall not form the basis of, or substantially comprise, a claim against the [FDIC]." 12 U.S.C. § 1821(d)(9)(A).

The escrow agreement that forms the basis for the counterclaim in this case is an agreement that tends to diminish the interests of the FDIC and its assignee UCB in the loan to Davenport. Therefore, to form the basis of this counterclaim, the agreement must meet the requirements set out in 12 U.S.C. § 1823(e). *See Resolution Trust Corp. v. Allen*, 16 F.3d 568 (4th Cir. 1994). However, in their second amended counterclaim, Counter-Plaintiffs admit that "[t]here was no written agreement for this entire transaction, other than the Notes, Mortgage, and closing documents for each property." (Sec. Am. Countercl. ¶ 18, Dkt. No. 183.) Furthermore, Counter-Plaintiffs state that "the only written reference to the escrow money was placed on the closing documents[.]" (*Id.*) Through these admissions, Counter-Plaintiffs have pleaded themselves out of court. *See Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994) (affirming district court's dismissal where a plaintiff had "plead particulars, and they show that he has no claim").

In opposition to the motion to dismiss, Counter-Plaintiffs argue that "in a typical banking situation the bank is required to maintain the full escrow agreement[ ]" but that UCB "failed to provide such an agreement in discovery." (Mem. in Opp. to Mot. to Dismiss ¶ 12, Dkt. No. 197.) This contention is irrelevant because Counter-Plaintiffs admit that there never was a written agreement. Through this admission that the escrow agreement was never put in writing, Counter-Plaintiffs show that their counterclaim is barred by FIRREA. *See* 12 U.S.C. § 1823(e); 12 U.S.C. § 1821(d)(9)(A). Accordingly, their claim must be dismissed for failure to state a claim. *See Thomas*, 31 F.3d at 558-59.

Counter-Plaintiffs further argue that the written reference to the escrow agreement in the closing documents is sufficient to allow their counterclaim to survive the motion to dismiss. However, the Seventh Circuit has rejected such incorporation by reference as a means to satisfy

the requirements of 12 U.S.C. § 1823(e). *Federal Deposit Ins. Corp. v. O'Neil*, 809 F.2d 350, 353-54 (7th Cir. 1987), *abrogated on other grounds as recognized by Federal Sav. & Loan Ins. Corp. v. Gordy*, 928 F.2d 1558 (11th Cir. 1991). In *O'Neil*, the court found that a reference to "certain agreements" in a promissory note that itself met the requirements of § 1823(e) was insufficient to enforce those "certain agreements" against the FDIC stating, "[the FDIC] can ignore any side agreements imposing conditions on promissory notes that it acquires from troubled banks unless the agreement conforms to the demanding requirements of section 1823(e)." *Id*. Therefore, the reference to the escrow agreement in the closing documents is insufficient to save this counterclaim.

> B. **Illinois Credit Agreements Act**

Under the Illinois Credit Agreements Act ("ICAA"),

> A debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement is in writing, expresses an agreement or commitment to lend money or extend credit or delay or forbear repayment of money, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.

815 ILCS 160/2. Illinois courts have found that escrow agreements for loan proceeds are credit agreements within the meaning of the ICAA. *See, e.g.*, *R & B Kapital Dev., LLC v. N. Shore Cmty. Bank & Trust Co.*, 832 N.E.2d 246, 251-53 (Ill. App. Ct. 2005). Therefore, to maintain an action on an escrow agreement, the ICAA requires that agreement to be in writing, set forth relevant terms and conditions, and be signed by the debtor and creditor. 815 ILCS 160/2. As discussed above, in their second amended counterclaim, Counter-Plaintiffs admit there was no written escrow agreement. (Sec. Am. Countercl. ¶ 18, Dkt. No. 183.) By pleading these facts, Counter-Plaintiffs show that the escrow agreement cannot meet the requirements of the ICAA. Here too, then, Counter-

6

Plaintiffs have pleaded themselves out of court by alleging facts that establish their claim is barred. *See Thomas*, 31 F.3d at 558-59. Accordingly, the counterclaim is dismissed for failure to state a claim.

## CONCLUSION

For the reasons stated above, UCB's Motion to Dismiss the Second Amended Counterclaim is granted. Counter-Plaintiffs will not be given another opportunity to re-plead. In its previous ruling in this case, the Court stated it was giving Counter-Plaintiffs one last chance to make an argument regarding the $700,000 escrow funds in their second amended counterclaim. However, Counter Plaintiffs failed sufficiently to state a claim. Accordingly, the counterclaim is dismissed in its entirety with prejudice. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997); *Stanard v. Nygren*, 658 F.3d 792, 801 (7th Cir. 2011).

ENTERED:

Dated: June 8, 2015

Andrea R. Wood
United States District Judge